UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DOUGLAS E. SHIELDS,<br><br>      Plaintiff,<br><br>  v.<br><br>RENEE BAKER,<br><br>      Defendant. | Case No. 3:18-cv-00031-MMD-WGC<br><br>ORDER |

## I. SUMMARY

*Pro se* Plaintiff Douglas E. Shields, who is currently incarcerated in the custody of the Nevada Department of Corrections ("NDOC"), sued Defendants under 42 U.S.C. § 1983 for allegedly blocking his access to the chapel at Lovelock Correctional Center ("LCC") because he identifies as a member of the LGBTQ community, retaliating against him for filing grievances regarding his treatment when he tried to enter the chapel, and denying him due process in finding him guilty of certain disciplinary charges and transferring him to Ely State Prison ("ESP"). (ECF No. 1-2.) Before the Court is Defendants' motion for summary judgment on all of Plaintiff's claims the Court permitted to proceed past screening (ECF No. 79 ("Motion")),[1] and a motion to seal one of the exhibits that accompanies the Motion (ECF No. 80).[2] As further explained below, the

---

[1] Plaintiff filed a response (ECF No. 92), and Defendants filed a reply (ECF No. 98).

[2] Plaintiff did not file a response to the motion to seal. Defendants seek to file under seal an audio recording of Plaintiff's disciplinary hearing. (ECF No. 80.) Defendants argue compelling reasons exist to seal medical records, then state the exhibit they seek to seal is a recording of a hearing—not a medical record—and then state, "[a]ccordingly, Defendants request that the exhibits be filed under seal to prevent their entry into the public record and to protect the confidentiality of Plaintiff's records." (*Id.* at 3.) Defendants' argument does not follow. Moreover, having reviewed the hearing

1  Court will grant in part, and deny in part, Defendants' Motion because the Court agrees
2  with Defendants that Plaintiff received the process he was due as to his administrative
3  segregation, and did not retaliate against him by transferring him to High Desert State
4  Prison ("HDSP"), but finds genuine disputes of material fact preclude summary judgment
5  on Plaintiff's retaliation claim regarding his transfer to ESP, along with his equal
6  protection and religion claims.

**II.   BACKGROUND³**

Plaintiff identifies as a member of the LGBTQ [Lesbian, Gay, Bisexual, Transgender, Queer] community. (ECF No. 7 at 8.) From March 1, 2012 through November 25, 2015, he worked as the Chapel Clerk in the chapel at LCC. (ECF No. 92 at 63.) His duties as Chapel Clerk included scheduling religious services, logging attendance, checking in and out religious media, keeping track of materials used in the chapel, and assisting the Chaplain as needed. (*Id.*)

Between 2013 and when Plaintiff was removed from his duties as Chapel Clerk in November 2015, Plaintiff alleges that he and other LGBTQ inmates were blocked from entering the chapel at LCC by prison guards who made anti-gay remarks, while non-LGBTQ imamates were allowed to access the chapel. (ECF No. 7 at 3-10.) Plaintiff further alleges he attempted to grieve this allegedly discriminatory conduct, but he never received any responses to his grievances. (ECF No. 92 at 67, 81, 85-87, 89-91, 93.)

While there is a dispute of fact regarding what prompted the investigation discussed *infra*, beginning in September 2015, Defendant Gentry decided to investigate Plaintiff, and found unauthorized property on Plaintiff's person, and in his cell. On Plaintiff's person, Defendant Gentry found a reusable Trader Joe's shopping bag

---

audio, the Court does not find the topics discussed at the hearing sufficiently sensitive to find compelling reasons exist to permit the exhibit to remain under seal. The Court will therefore deny the motion to seal. *See Debarr v. Carpenter*, Case No. 3:12-cv-00039-LRH-WGC, 2017 WL 424860, at *1-*4 (D. Nev. Jan. 30, 2017) (denying motion to seal disciplinary hearing transcripts and recordings).

³The following facts are undisputed unless otherwise noted.

disguised as a paper bag, with other bags inside it. (ECF No. 79-1 at 2.) In Plaintiff's cell, Defendant Gentry found, among other items, office supplies, religious CDs, and a picture of Plaintiff with the Chaplain. (ECF No. 79 at 4-5.) The unauthorized property found on Plaintiff's person led to one disciplinary proceeding (the "First Proceeding"), and the unauthorized property in Plaintiff's cell led to another (the "Second Proceeding"). (*Id.* at 3-6.) Plaintiff was removed from his cell, placed in administrative segregation, and removed from his job as Chapel Clerk from the time these two disciplinary proceedings began. (*Id.*)

Plaintiff pleaded guilty to the charges brought against him in the First Proceeding, and received 45 days of disciplinary segregation as a punishment. (*Id.* at 4.)

But Plaintiff pleaded not guilty to the charges brought against him in the Second Proceeding. (ECF No. 92 at 69.) Those charges were: (1) theft, for possession of the office supplies and CDs he was not supposed to have in his cell; and (2) compromising staff, because of the picture with the Chaplain, which NDOC officials argued indicated Plaintiff compromised the Chaplain. (ECF No. 79 at 4.) Following a disciplinary hearing, Plaintiff was found guilty on both charges, and sentenced to 12 months disciplinary segregation. (*Id.* at 4-5.) In December 2015, Plaintiff appealed this disciplinary finding through three levels of NDOC's grievance process. (*Id.* at 5.) While the Warden found the discipline imposed warranted, he dismissed the compromising staff charge and reduced Plaintiff's sentence from 12 months of disciplinary segregation to six months. (*Id.* at 5-6.)

Plaintiff was transferred to ESP to serve his disciplinary segregation sentence in January 2016. (*Id.* at 6.) Plaintiff was subsequently released from disciplinary segregation, and was double-celled with another inmate at ESP by March 15, 2016. (*Id.*) Plaintiff was approved for transfer from ESP to HDSP on November 4, 2016, and ultimately transferred to HDSP on January 25, 2017. (*Id.*) Plaintiff was later approved to transfer back to LCC, and was transferred back to LCC in July 2017. (*Id.*) Plaintiff remains in custody at LCC to this day. (ECF No. 92 at 3.)

3

## III. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *See Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986) (citation omitted).

The moving party bears the burden of showing that there are no genuine issues of material fact. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th

1  Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient[.]" *Anderson*, 477 U.S. at 252.

**IV.     DISCUSSION**

Defendants' Motion partially misses the mark because it does not fully address Plaintiff's allegations and arguments. Specifically, Defendants ignore that Plaintiff alleges he and other LGBTQ inmates were denied access to the chapel at LCC in the period before the disciplinary proceedings Defendants focus on in their Motion, and that Plaintiff's retaliation theory as to his transfer to ESP is one of selective enforcement— that he was targeted for violating rules that others also violated, but were not punished for violating, because he had been filing grievances about being denied access to the chapel. However, the Court agrees with Defendants that there is no evidence Plaintiff's transfer to HDSP was retaliatory, and he received the process he was due throughout the disciplinary proceedings that are the focus of this case. The Court first addresses in more detail below Defendants' Motion as to Plaintiff's retaliation claims, then his religion and equal protection claims, and finally his due process claim.

**A.     Retaliation Claims**

The Court allowed Plaintiff to proceed past screening on two retaliation claims: one based on his transfer from LCC to ESP in Count I, and another based on his transfer from ESP to HDSP in Count II. (ECF No. 7 at 4-5, 11, 13-14.) The Court now addresses Defendants' Motion as to each claim.

**1.     Transfer to ESP**

Defendants primarily argue they are entitled to summary judgment on this claim because Plaintiff was transferred to ESP for being found guilty of theft (for possessing unauthorized property) and compromising staff (as evidenced by the picture of Plaintiff and two other inmates with the Chaplain). (ECF No. 79 at 9-10.) Plaintiff counters that this argument misconstrues the allegations in his Complaint—basically arguing that the investigation leading to his discipline that resulted in his transfer to ESP was itself

retaliation for the grievances he filed regarding LGBTQ inmates (including himself) being denied entry to the chapel at LCC. (ECF No. 92 at 37-49.) Defendants reiterate in reply that the only reason Plaintiff was transferred to ESP is his conviction on disciplinary charges for staff compromise. (ECF No. 98 at 12-13.) The Court finds Plaintiff's argument more persuasive.

Drawing all reasonable inferences in his favor, Plaintiff has at least shown a dispute of material fact as to why Sargent Gentry decided to begin his investigation of Plaintiff for possession of unauthorized property, rendering summary judgment on Plaintiff's First Amendment retaliation claim based on his transfer to ESP inappropriate at this time. In other words, Defendants' argument in their Motion does not address Plaintiff's theory of the case as to this claim, so the Court cannot say Defendants are entitled to judgment as a matter of law. Indeed, in reply, Defendants concede that Sargent Gentry offered two different explanations for why he investigated Plaintiff and discovered unauthorized property. (ECF No. 98 at 13.) While Defendants argue these conflicting accounts do not matter because neither was retaliatory (*id.*), the Court instead finds they highlight the material dispute of fact—what prompted Sargent Gentry to search Plaintiff and his cell in the first place? Was it because he saw Plaintiff on the yard with a reusable Trader Joe's bag disguised as a paper bag? (ECF Nos. 79 at 3, 79-1 at 2, 92 at 135.) Was it because he was conducting a compliance check on all cells in Unit 1A, including Plaintiff's? (ECF No. 92 at 15, 267.) Or was it because Sargent Gentry had previously warned Plaintiff that he did not like inmates who filed grievances against him or his staff, and warned Plaintiff that he would search Plaintiff's cell and find something he could use to send Plaintiff to disciplinary segregation if Plaintiff kept filing grievances? (*Id.* at 7, 101, 103, 209.)

The Court cannot say at this juncture. But this illustrates the material dispute of fact as to what led to the investigation that ultimately got Plaintiff transferred to ESP. In other words, while there is no dispute that Plaintiff was transferred to ESP after going through a disciplinary process, a factual question nonetheless remains as to whether

6

Plaintiff was transferred to ESP and placed in disciplinary segregation because he filed grievances. *See Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005) (stating that the elements of a retaliation claim include that the official took an adverse action against the prisoner "(2) because of (3) that prisoner's protected conduct"). This makes Plaintiff's First Amendment Retaliation claim based on his transfer to ESP unsuitable for resolution at summary judgment. Further, the Court rejects Defendants' argument they are entitled to qualified immunity on this claim. (ECF No. 79 at 20-21.) *See also Rhodes*, 408 F.3d at 567 ("The prohibition against retaliatory punishment is clearly established law in the Ninth Circuit for qualified immunity purposes.") (citation, internal quotation marks and punctuation omitted).

Defendants also argue for the first time in their reply that this claim is time-barred under the applicable statute of limitations. (*Compare* ECF No. 79 (declining to make a statute of limitations argument) *with* ECF No. 98 at 8 (making the argument).) But "arguments raised for the first time in a reply brief are waived." *Simms v. Navient Sols., Inc.*, 157 F. Supp. 3d 870, 875 (D. Nev. 2016). Moreover, it would be unfair for the Court to grant summary judgment to Defendants on statute of limitations grounds because Plaintiff has not yet had an opportunity to respond to this argument.[4]

Defendants further argue in reply that not all of Plaintiff's exhibits accompanying his response to Defendants' Motion—including at least one of the exhibits the Court refers to in its discussion *supra*—are authenticated, and thus the Court should not consider them. (ECF No. 98 at 10-11.) However, Defendants rely on the outdated standard from *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). (ECF No. 98 at 11-12.) "[T]he 2010 amendments to Federal Rule of Civil Procedure 56 eliminated this unequivocal requirement [that all exhibits be properly authenticated at the summary judgment stage] and mandate only that the substance of the proffered evidence would be admissible at trial." *Dinkins v. Schinzel*, 362 F. Supp. 3d 916, 922-23 (D. Nev. 2019)

---

[4]Defendants may nonetheless raise their statute of limitations argument at trial, as they included it as an affirmative defense in their answer. (ECF No. 30 at 8.)

7

(internal quotation marks, punctuation, and footnote omitted). And the substance of the evidence discussed *supra* that Defendant challenges in reply—specifically a grievance without a log number or official employee response—could be admissible at trial assuming Plaintiff can proffer additional supporting evidence to establish the authenticity of this grievance, containing Sargent Gentry's alleged warning to Plaintiff. (ECF No. 98 at 11 (challenging ECF No. 92 at 83-94, 99-108).) Moreover, Plaintiff has not yet had an opportunity to respond to Defendants' failure to authenticate argument. The Court will therefore consider the challenged evidence for purposes of evaluating Defendants' Motion. *See Romero v. Nevada Dep't of Corr.*, 673 F. App'x 641, 643-44 (9th Cir. 2016) (finding that the district court's decision not to consider certain evidence at summary judgment was not an abuse of discretion because the district court gave the plaintiff notice and an opportunity to fix the authentication issues before ruling on the summary judgment motion).

Defendants make their statute of limitations and failure to authenticate arguments as to Plaintiff's response to their Motion regarding Plaintiff's other claims as well. But because Defendants raise these arguments for the first time in reply, the Court will not resolve the Motion based on these arguments. Compounding the Court's concern with Plaintiff's lack of notice of these arguments is the fact that Plaintiff is proceeding *pro se*—and the Court must liberally construe all documents filed by *pro se* litigants. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court therefore will not grant Defendants' Motion either because the statute of limitations has run or because Plaintiff failed to authenticate his exhibits.

In sum, Defendants' Motion is denied as to Plaintiff's First Amendment retaliation claim based on his transfer from LCC to ESP. (ECF No. 7 at 5.)

### 2. Transfer to HDSP

However, the Court agrees with Defendants there is no dispute of material fact as to Plaintiff's First Amendment retaliation claim based on his transfer from ESP to HDSP (ECF No. 7 at 11 (allowing the claim to proceed past screening)), and will grant

Defendants' Motion as to that claim (ECF No. 79 at 10). Defendants proffer sufficient evidence to establish that Plaintiff was transferred from ESP to HDSP because he completed his term of disciplinary segregation. (ECF No. 79-8 at 7 (stating Plaintiff was transferred from ESP to HDSP because he had completed disciplinary segregation).) And Plaintiff offered no evidence or argument to rebut Defendants' proffered evidence on this point. (ECF No. 92.) Thus, Defendants have established there is no dispute of material fact, and they are entitled to judgment as a matter of law on this particular claim.[5] (ECF No. 7 at 11.)

### B. Religion and Equal Protection Claims

The Court allowed three claims to proceed past screening based on Plaintiff's allegations that he and other LGBTQ inmates at LCC were denied entry to the chapel, while non-LGBTQ inmates were not. (ECF No. 7 at 5-8.) Specifically, Plaintiff was allowed to proceed on a claim for the violation of his rights under the Free Exercise Clause of the First Amendment, a violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and a violation of his equal protection right under the Fourteenth Amendment. (*Id.*)

Defendants argue they are entitled to summary judgment on all three claims because Plaintiff was not permitted to go to chapel while he was in disciplinary

---

[5] Defendants also argue they are entitled to summary judgment on this claim because Plaintiff did not oppose Defendants' Motion as to this claim. (ECF No. 98 at 13-14.) However, that argument is not quite correct. First, LR 7-2(d) does not apply to a motion for summary judgment such as the Motion. *See* LR 7-2(d) ("The failure of an opposing party to file points and authorities in response to any motion, except a motion under Fed. R. Civ. P. 56 or a motion for attorney's fees, constitutes a consent to the granting of the motion."). Second, *Ghazali v. Moran*, 46 F.3d 52 (9th Cir. 1995), does not strongly support Defendants' argument. (ECF No. 98 at 13-14 (citing this case).) Indeed, even the *Ghazali* court stated, "[a] motion for summary judgment, which on its face does not even address the issues in the case and point out to the district court that there is an absence of evidence to support the case of the party with the burden of proof, cannot be granted simply as a sanction for a local rule violation, without an appropriate exercise of discretion." 46 F.3d at 54. In sum, Defendants are entitled to summary judgment on this claim because they have proffered evidence disproving Plaintiff's claim and he failed to respond with any contrary evidence, not simply because Plaintiff did not respond to the pertinent portion of Defendants' Motion.

segregation at ESP. (ECF No. 79 at 10-14.) Plaintiff counters that this argument applies the wrong time frame, explaining that he is not, and was never in this case, challenging the restrictions imposed on him as part of his disciplinary segregation that prohibited him from attending chapel while he was serving his disciplinary segregation sentence. (ECF No. 98 at 23.) Instead, Plaintiff argues, he is challenging the actions of LCC guards assigned to the gun posts outside of the chapel, who would not let Plaintiff and other LGBTQ inmates into the chapel at certain times, though they would allow in non-LGBTQ inmates, along with the actions of higher-ranking LCC employees who sanctioned this conduct. (*Id.* at 19-37.) The Court agrees with Plaintiff that Defendants' argument as to these claims misses the mark.

There is no dispute that Plaintiff was not allowed to go to chapel while he was in disciplinary segregation at ESP, but that is irrelevant to these three claims. The Court described the alleged conduct forming the colorable basis for these three claims in the screening order. (ECF No. 7 at 5-8.) It is therefore surprising that Defendants' Motion is nonresponsive to Plaintiff's allegations. In any event, Defendants have not shown they are entitled to summary judgment on these three claims.

Moreover, in response to Defendants' Motion, Plaintiff proffers affidavits from several other prisoners in addition to himself tending to substantiate his allegations that LGBTQ inmates were denied access to the chapel in the 2013-2015 time period, while non-LGBTQ inmates were not. (ECF No. 92 at 65-69 (explaining in Plaintiff's sworn affidavit how his access to the chapel was blocked several times, and how he attempted to grieve the issue), 109-115 (stating that he, Scott Pace, and Plaintiff were not allowed into the chapel on August 20, 2015 by a guard who would not give them his name, and who told them that "[t]he Gay Jesus doorcall is on someone else's shift," though the same guard let some other inmates into the chapel while they were waiting there), 177-187 (including similar allegations in another affidavit signed by Plaintiff), 191-93 (swearing that Scott Pace identifies as bisexual), 195-203 (stating that Joseph Anderson saw guards block Plaintiff's access to the chapel while making derogatory remarks

regarding Plaintiff's sexuality in the fall of 2014), 205-209 (stating that Matthew Williams saw Plaintiff and other LGBTQ inmates being harassed, and blocked from entering the chapel, between February 2013 and July 2015), 223-227 (stating that Christopher Eddines was with Plaintiff on November 12, 2014, when he and Plaintiff were not allowed into the chapel by a guard who told them he had been ordered to keep "the homosexuals" out of it).) All of this evidence compels the Court to find, contrary to Defendants' argument, that disputes of fact preclude summary judgment on Plaintiff's First Amendment Free Exercise, RLUIPA, and Fourteenth Amendment equal protection claims.

Defendants further argue they are entitled to summary judgment as to these three claims because Plaintiff failed to exhaust his administrative remedies. (ECF No. 79 at 16-18.) However, Plaintiff responds to this argument with an affidavit explaining he repeatedly grieved the issues giving rise to these three claims, but never received a response, accompanied by several grievances that only Plaintiff appears to have written on, but in which Plaintiff appears to be attempting to grieve the issues giving rise to these three claims. (ECF No. 92 at 67 (stating that Plaintiff attempted to grieve the issue, but his grievance was never responded to), 81 (containing the grievance Plaintiff says was never responded to), 85-87 (attempting to follow up on that grievance), 89-91 (attempting to follow up on it again), 93 (attempting to follow up yet again).) A material dispute of fact therefore exists as to whether Plaintiff properly exhausted his administrative remedies as to these claims. "[F]ailure to exhaust administrative remedies is an affirmative defense that the defendant must plead and prove in a PLRA case." *Albino v. Baca*, 747 F.3d 1162, 1176 (9th Cir. 2014). Defendants have not proven they are entitled to summary judgment on insufficient exhaustion of these claims in light of Plaintiff's proffered conflicting evidence. *See id.* at 1176-77 (reversing grant of summary judgment to the defendants and *sua sponte* granting summary judgment to the plaintiff that administrative remedies were unavailable to him).

///

Defendants also argue they are entitled to qualified immunity on these three claims (ECF No. 79 at 21), but the Court rejects this argument because, like Defendants' argument on the merits of these three claims, it too is based on the mistaken premise that Plaintiff is challenging the prohibition on attending chapel while he was in disciplinary segregation (*id.*). As explained *supra*, that argument seems to misunderstand Plaintiff's allegations, and is therefore unpersuasive.

In sum, Defendants' Motion is denied as to Plaintiff's First Amendment Free Exercise, RLUIPA, and Fourteenth Amendment equal protection claims. (ECF No. 7 at 5-8.)

### C.   Due Process Claim

The Court finally allowed Plaintiff to proceed past screening on a Fourteenth Amendment procedural due process claim based on Plaintiff's allegation that he spent a year in administrative segregation without receiving notice or a hearing. (*Id.* at 10-11.) Defendants argue they are entitled to summary judgment on this claim because he received the process he was due throughout both disciplinary proceedings and Plaintiff's time in administrative segregation. (ECF No. 79 at 14-16.) Defendants further reply that Plaintiff did not offer any contrary evidence in response to Defendants' Motion. (ECF No. 98 at 17.) The Court agrees with Defendants.

Plaintiff received the process he was due regarding the time he spent in administrative segregation that he challenges in this case. When a prisoner is placed in administrative segregation, prison officials must, within a reasonable time after the prisoner's placement, conduct an informal, nonadversary review of the evidence justifying the decision to segregate the prisoner. *See Hewitt v. Helms*, 459 U.S. 460, 476 (1983), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995). After the prisoner has been placed in administrative segregation, prison officials must periodically review the initial placement. *See Hewitt*, 459 U.S. at 477 n.9. An inmate has the right to notice and the right to be heard. *See Mendoza v. Blodgett*, 960 F.2d 1425, 1430 (9th Cir. 1992).

Defendants' proffered evidence establishes that Plaintiff received both an informal review following his placement in administrative segregation, and periodic subsequent reviews. (ECF No. 79-8 at 5-6.) More generally, Defendants' proffered evidence also establishes that Plaintiff received notice and an opportunity to be heard. (ECF Nos. 79-1, 79-3, 79-5, 79-7.) Plaintiff did not respond with any contrary evidence. (ECF No. 92.) Defendants are therefore entitled to summary judgment on Plaintiff's Fourteenth Amendment procedural due process claim based on Plaintiff's allegation that he spent a year in administrative segregation without receiving notice or a hearing (ECF No. 7 at 10-11), and the Court will grant Defendants' Motion as to that claim.

## V.  CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendants' motion for summary judgment (ECF No. 79) is granted in part, and denied in part, as specified herein.

It is further ordered that Defendants' motion to seal (ECF No. 80) is denied.

The Clerk of Court is directed to unseal Defendants' Exhibit F to their motion for summary judgment (ECF Nos. 81, 81-1). Exhibit F, which is a CD containing audio recordings, will be available for review upon request in the Clerk of Court's office in the Bruce R. Thompson Courthouse and Federal Building in Reno, Nevada.

DATED THIS 8th Day of March 2021.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE