UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DOUGLAS SHIELDS,<br><br>    Plaintiff<br><br>v.<br><br>RENEE BAKER, et. al.,<br><br>    Defendants | Case No.: 3:18-cv-00031-MMD-WGC<br><br>**Report & Recommendation of<br>United States Magistrate Judge**<br><br>Re: ECF No. 105 |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Plaintiff's Motion for Immediate Injunctive Order Against Transferring Plaintiff out of his Current Institution. (ECF No. 105.) Defendants filed a response. (ECF Nos. 108, 108-1, 108-2.) Plaintiff filed a reply. (ECF No. 109.)

After a thorough review, it is recommended that Plaintiff's motion be denied.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 1-2.) Plaintiff filed suit against various NDOC officials and employees for allegedly blocking his access to the chapel at Lovelock Correctional Center (LCC) because he identifies as a member of the LGBTQ community, for retaliating against him for filing grievances regarding his treatment when he tried to enter the chapel, and for denying him due process in finding him guilty of certain disciplinary charges and transferring him to Ely State Prison (ESP).

Plaintiff was transferred to ESP to serve his disciplinary segregation sentence in January 2016. He was released from disciplinary segregation and was double-celled with another inmate at ESP by March 15, 2016. He was approved for transfer form ESP to HDSP on November 4, 2016, and was ultimately transferred to HDSP on January 25, 2017. He was later approved to transfer back to LCC and was transferred there in July of 2017. Plaintiff was allowed to proceed on screening with two retaliation claims: one based on his transfer from LCC to ESP in Count I, and another based on his transfer from ESP to HDSP in Count II.

A motion for summary judgment was filed, and as to the retaliation claim in Count I, District Judge Du found there was a dispute of material fact as to why Sergeant Gentry decided to begin his investigation of Plaintiff for possession of unauthorized property, and whether he was transferred to ESP and placed in disciplinary segregation because he filed grievances. (ECF No. 99 at 6-7.) District Judge Du Did grant summary judgment in Defendants' favor as to the retaliation claim in Count II regarding his transfer from HDSP to ESP, finding the unrefuted evidence demonstrated he was transferred to HDSP because he completed his term of disciplinary segregation. (*Id*. at 8-9.)

On March 17, 2021, Plaintiff filed this motion for injunctive relief seeking an order staying any institutional transfer out of LCC.

## II. LEGAL STANDARD

The purpose of a preliminary injunction or temporary restraining order is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

Injunctions and temporary restraining orders are governed procedurally by Federal Rule of Civil Procedure 65, but case law outlines the substantive requirements a party must satisfy to obtain an injunction or restraining order. *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999) ("[T]he general availability of injunctive relief [is] not altered by [Rule 65] and depend[s] on traditional principles of equity jurisdiction.").

A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 23 (2008) (internal quotation marks and citation omitted). The instant motion requires that the court determine whether Plaintiff has established the following: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20 (citations omitted).).

The Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials. The PLRA provides, in relevant part:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Thus, § 3626(a)(2) limits the court's power to grant preliminary injunctive relief to inmates. *See Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir.

2000). "Section 3626(a)...operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators-no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id.* at 999.

A temporary restraining order is appropriate when irreparable injury may occur before the court can hold a hearing on a motion for preliminary injunction. *See* 11A The Late Charles Alan Wright & Arthur R. Miller, et. al., *Federal Practice and Procedure*, § 2951 (3d ed. 1999). The standard for issuing a temporary restraining order is identical to the standard for a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001); *see also* 11A The Late Charles Alan Wright & Arthur R. Miller, et. al., *Federal Practice and Procedure*, § 2951 (3d ed. 1999) ("When the opposing party actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that on an application for preliminary injunction and the proceeding is not subject to any special requirements."). A temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70,* 415 U.S. 423, 439 (1974).

In addition, in seeking injunctive relief, "there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint." *Pacific Radiation Oncology, LLC v. Queen's Medical Center*, 810 F.3d 631, 635 (9th Cir. 2015). "This requires a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself." *Id.* "The relationship between the preliminary injunction and the underlying complaint is sufficiently strong where the preliminary

injunction would grant 'relief of the same character as that which may be granted finally." *Id*. (quoting *De Beers Consl. Mines v. United States*, 325 U.S. 212, 220 (1945)). "Absent that relationship or nexus, the district court lacks authority to grant the relief requested." *Id*.

### III. DISCUSSION

**A. Argument**

In his motion, Plaintiff asserts that he has been housed at LCC since July 27, 2017. He was housed in general population (GP) until he was reclassified to protective segregation (PS) on May 7, 2020. He claims that in early February of 2021, LCC Warden Tim Garrett announced that LCC's PS unit would be closed, and that LCC PS inmates who wished to classify to GP would be allowed to do so, and that the prison would resolve enemy/separatee issues between LCC GP and LCC PS inmates to the best of their ability. Plaintiff asserts that he did not ask for anyone to be listed as an enemy/separatee when he was reclassified to PS, but LCC administrators nevertheless listed an LCC GP inmate on his enemy/separatee list. Both Plaintiff and the other inmate have requested that the enemy/separatee listing be removed. Plaintiff states that he explained his situation to Garrett, and Garrett told them that they would resolve the issue and Plaintiff could return to GP at LCC.

Plaintiff went to a full classification hearing on March 15, 2021, and claims that Associate Warden LeGrand told him that even if his separatee/enemy were removed, they would not let him back on their GP yard, advising Plaintiff he would be "shipped out of here." Plaintiff also maintains that Lieutenant Widmar told him: "Look, we all know that you came back here (to protective segregation) for a gay relationship! Too bad it didn't work out for you! You made your bed, now lie in it!" Finally, Plaintiff asserts that while he was called to morning pill call and then in the library, custody allowed GP inmates to intermingle with PS inmates. Plaintiff claims this

was done to have Plaintiff attacked, but says the effort failed because he was friendly with this group of GP inmates.

Plaintiff argues that Defendants have engaged in retaliatory transfers before, and he believes LeGrand will make good on the threat to ship him out of LCC. As such, he seeks an injunction ordering that any institutional transfer be stayed while his grievance on this issue is pending.

Defendants acknowledge that in February 2021, inmates were informed that the PS unit at LCC may be closing in an attempt to relocate staffing for safety and security of the institution. (Garrett Decl., ECF No.108-1 at 2 ¶ 7.) Garrett did tell the offenders in the affected units that they would have the opportunity to go to a full classification hearing to determine their eligibility for GP. (*Id*. ¶ 8.) Garrett denies he said that nearly all separatee issues would be resolved, and denies having a conversation with any inmate about an inmate's particular situation. (*Id*. ¶¶ 9-10.) He further denies offering Plaintiff an opportunity to return to GP at LCC, or telling Plaintiff he would resolve Plaintiff's separatee issue. (*Id*. ¶¶ 11-12.)

According to LCC Associate Warden Kara LeGrand, she was a member of the full classification committee on March 15, 2021, that heard Plaintiff's request to be classified from PS to GP status. (LeGrand Decl., ECF No. 108-2 ¶¶ 7-8.) She denies the statements Plaintiff attributes to her and Lieutenant Widmar during the hearing.(*Id*. ¶¶ 9-11.) Instead, she maintains that Plaintiff said that he had gone to PS because of a relationship, but his case notes indicated he had requested PS when he reported another inmate had been extorting him and he felt he was viewed as a "snitch." (*Id*. ¶ 12.) According to LeGrand, classification status depends on many factors, and the committee makes individual determinations regarding separatee status and regarding removal of names on a separatee list. (*Id*. ¶¶ 14-15.) At the hearing, the committee

determined that Plaintiff's request to classify as GP at LCC would not be granted and at that time the existing enemy would not be removed, and as such, Plaintiff is unable to go to LCC's GP yard. (*Id*. ¶ 18.)

Defendants argue that the request for injunctive relief is not ripe, because inmates were only informed that PS at LCC *may* be closing, and that is still uncertain as no final decision has been made. In addition, Defendants argue that Plaintiff admits he submitted a grievance on this issue on March 16, 2012, and if Plaintiff is attempting to insert a new claim into this case, that claim has not been exhausted through the prison grievance process, and it has not been screened by the court. Defendants contend that Plaintiff cannot show irreparable injury for an event that is uncertain. They further assert that while Plaintiff wants to stay at LCC, he has no right to stay in a particular prison.

In his reply, Plaintiff disputes that he said that he went to PS because of a relationship, but asserts he "volunteered" for PS because he had been the victim of rape by an inmate in GP at LCC, but that inmate how now left the institution. He felt that he would be labeled a "snitch" for reporting his rapist, and he feared for his safety.

Plaintiff argues that this is not a new claim, but part of the same abusive treatment he has been complaining about. He maintains that the possibility of asserting a new claims exists, but he is not brining any new claims at this time. Plaintiff provides affidavits from other inmates who corroborate his statement that they were told the PS unit would be closing, that the prison would resolve enemy/separatee issues to the best of its ability, and that Plaintiff spoke with Garrett about his situation. (ECF No. 109 at 10-15.)

**B. Analysis**

Preliminarily, the court will assess whether there is a sufficient nexus between the relief sought in this motion and the conduct asserted in the underlying complaint. It is true that Plaintiff's complaint contains two claims for retaliatory transfers. His first claim alleges that he was transferred to ESP to teach him a lesson because he had filed a grievance and disciplinary appeal related to the disciplinary finding after an investigation into a photograph containing the chaplain, Plaintiff, and two other inmate chapel workers. This claim was allowed to proceed against defendants Q. Byrne, Sandie, Carpenter, Baze, V. Olivas, R. Olivas, Gentry, Keener, Gilliland, Bartel, and Belanger. The second retaliation claim asserts that Dzurenda, Q. Byrne, McDaniel, Filson, H. Byrne, and Castro transferred him to HDSP in retaliation for filing grievances. The second claim is no longer part of this case as summary judgment has been granted in Defendants' favor.

In this motion for injunctive relief, Plaintiff asserts that LCC Warden Garrett announced in February of 2021 that LCC's protective segregation unit would be closing, and Garrett represented that they would resolve Plaintiff's enemy/separatee issue and he would be able to stay in GP at LCC. Then, when Plaintiff went to his classification hearing on March 15, 2021, he claims that Associate Warden LeGrand told Plaintiff they would not let him stay at LCC even if his enemy/separatee issue was resolved.

While Plaintiff's claim in this motion asserts a plan to retaliate against Plaintiff by denying his classification to GP at LCC which will result in a transfer elsewhere, Plaintiff has not demonstrated a sufficient nexus between this alleged plan and the other allegations of retaliation asserted in the complaint. Those claims are for alleged retaliatory transfers (one of which is no longer part of this case) against Defendants who are not alleged to have been

involved with the plan discussed in this motion. Plaintiff has not set forth a connection between the Defendants named in this complaint and Warden Garrett, Associate Warden LeGrand, and Lieutenant Widmar, who are discussed in this motion. Nor is there any evidence of some larger plan or conspiracy at play here, as Plaintiff suggests.

Even if Plaintiff did provide a sufficient nexus between the relief sought in this motion and the allegations of his complaint, he has not demonstrated he is entitled to the injunctive relief he seeks.

First, Plaintiff is required to show a likelihood of success on the merits. As Defendants point out, Plaintiff does not even have a claim proceeding in this case asserting retaliation by these NDOC actors related to the possible closing of LCC's PS unit and possible transfer out of LCC. Even if he did have such a claim, it would have to be exhausted before it may proceed in this court. If such a claim was part of his complaint, Plaintiff has not established a likelihood of success on the merits as his assertions of retaliatory motive are disputed by Garrett and LeGrand, who deny that such statements were made to Plaintiff and maintain that Plaintiff's classification request was denied for legitimate reasons. Therefore, Plaintiff has not shown a likelihood that he would succeed on a retaliation claim against these individuals.

In addition, a plaintiff seeking preliminary injunctive relief must demonstrate he is likely to suffer irreparable harm in the absence of preliminary relief. According to Garrett and LeGrand, the LCC protective segregation unit *may* close, but no final determination has been made. While Plaintiff contends that Garrett represented that this was a certainty, the unit is still open, and it does not appear that a decision has been made as to where Plaintiff will be housed in the event it is closed, other than that the classification committee rejected his request to be placed in GP at LCC. This would likely mean he *could be* subject to transfer to another institution

within NDOC. The court cannot construe a *possible* transfer to another NDOC facility as rising to the level of "irreparable harm." The Constitution "does not guarantee that the convicted prisoner will be placed in any particular prison[.]" *Meachum v. Fano*, 427 U.S. 215, 224 (1976). "The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons." *Id.* (emphasis original). A transfer cannot be retaliatory, but Plaintiff's argument regarding retaliatory motive is speculative at this point. Therefore, it cannot be said that Plaintiff will face irreparable harm in the absence of injunctive relief.

Under these circumstances, entering an injunction precluding a housing transfer is not in the public interest, and the balance of hardships does not weigh in Plaintiff's favor.

Moreover, in requesting that the court issue an order staying an institutional transfer, Plaintiff is asking the court to involve itself in the day-to-day "discretionary decisions that are not the business of federal judges." *Meachum*, 427 U.S. at 229.

Therefore, Plaintiff's motion for injunctive relief should be denied.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING** Plaintiff's motion for injunctive relief (ECF No. 105).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: April 7, 2021

_____
William G. Cobb
United States Magistrate Judge